**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROCON, INC.,<br><br>Defendant. | Civil Action No. 21-8534 (KMW)(MJS)<br><br>**OPINION** |

**WILLIAMS**, District Judge

This matter comes before the Court on Plaintiffs' motion for default judgment against Defendant Rocon, Inc. (ECF No. 9). For the reasons expressed below, the Court will **GRANT** Plaintiffs' motion for default judgment and award Plaintiffs $22,991.37.

**BACKGROUND**

**A. Facts**

Plaintiff Trustees of International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund ("Health Fund"), Plaintiff Trustees of International Union of Painters and Allied Trades District Council 711 Vacation Fund ("Vacation Fund"), and Plaintiff Trustees of Painters District Council 711 Finishing Trades Institute ("FTI" and with Health Fund and Vacation Fund, collectively the "Funds") are employee benefit plans within

the meaning of Section 3(3) of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002(3), and multiemployer plans within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). *Complaint*, ECF No. 1 at ¶¶ 4-6.  The Funds are the collecting agent for the National Finishing Trades Institute of New Jersey, Industry Advancement Fund, the Political Action Committee, Safety Training Recognition Awards Program, Labor Management Program, and the Job Targeting Program.  *Id.* at ¶ 8.  Plaintiff International Union of Painters and Allied Trades District Council (the "Union" with the Funds, collectively "Plaintiffs") is a labor organization within the meaning of Section 301 of the Labor Management and Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4) and represents employees in an industry affecting commerce.  *Id.* ¶¶ 12-13.

The Defendant Rocon, Inc. ("Rocon" or "Defendant") is an Employer or Party in Interest as defined in Sections 3(5) and 3(14) of ERISA, 29 U.S.C. § 1002(5) and (14) respectively, and was or is an employer in an industry affecting commerce within the meaning of Section 301 of LMRA, 29 U.S.C. § 185.  *Id.* at ¶ 15.

The Defendant's employees are represented by the Union and are participants in, and beneficiaries of, the Funds.  The Defendant is a party to a collective bargaining agreement (the "CBA" or "Agreement") with the Union.  *Motion*, ECF No. 9-2 Exhibits A, C (Rocon's signature page to the CBA indicating that the

2

signatory accepts and agrees to be bound by all the terms and conditions as set forth in the [Collective Bargaining] Agreement); *see also Complaint*, ECF No. 1 at ¶¶ 19, 29.

Pursuant to the CBA, Defendant is required to pay contributions to the Funds on a monthly basis. *CBA*, ECF No. 9-2 Exhibit A. The CBA specifically provides that "if an Employer fails to make contributions to any Fund . . . within twenty (20) days after the date required by the trustees, such failure shall be deemed a violation of this Agreement and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement." *Id.* Moreover, the Funds adopted a Policy for the Collection of Delinquent Contributions (the "Policy"). The Policy specifically sets forth the amounts to be recovered. *Policy*, ECF No. 9-2 Exhibit B.

In the Complaint, Plaintiffs assert that Defendant failed to remit the required contributions to the Funds for the benefit of its employees. *Complaint*, ECF No. 1 at ¶ 22. Additionally, Plaintiffs claim that Defendant failed to remit or has only remitted a portion of the required contributions to the Funds from July 1, 2019 through January 31, 2020. Despite the Fund's demands, as demonstrated by various delinquency letters, Defendant has failed to make the required contributions. *Id.* at ¶¶ 23-24; *see also Motion*, ECF No. 9-2 Exhibits E, F. Plaintiffs further assert that "such delinquencies constitute prohibited transactions under

3

29 U.S.C. § 1106(a)(1)(B) [and] failure to pay the delinquencies enumerated in the CBA is violative of 29 U.S.C. § 1145." *Complaint*, ECF No. 1 at ¶¶ 25-26. Finally, Plaintiffs allege that Defendant failed to remit dues check-offs from July 1, 2019 through January 31, 2020 and thereby breached the CBA. *Id.* at ¶¶ 30-32.

### B. Procedural History

On April 7, 2021, Plaintiffs filed a Complaint against Defendant alleging claims of breach of the CBA and violations of Section 515 of ERISA, 29 U.S.C. § 1145. The Defendant, c/o Joseph J. Bennie, was served on April 26, 2021. ECF No. 5. Defendant has failed to respond to the Summons. On May 17, 2021, Plaintiffs filed a request for default (ECF No. 6), which the Clerk of Court entered on May 18, 2021 pursuant to Federal Rule of Civil Procedure 55(a).

On September 1, 2021, Plaintiffs moved for default judgment (ECF No. 9). In addition to the contributions allegedly owed by Defendant, Plaintiffs also seek interest and liquidated damages, as well as attorneys' fees and costs under 29 U.S.C. § 1132(g)(2)(D). *Motion*, ECF No. 9-1 at 2-4; *Policy*, ECF No. 9-2 Exhibit B.

## JURISDICTION

This Court has subject matter jurisdiction over the current matter pursuant to sections 502(e)(1) and (f), and 515, and 502 of ERISA, 29 U.S.C. § 1132(e)(1) and (f), and § 1145, and § 1132

4

respectively; and § 301 of LMRA, and 29 U.S.C. § 185; and Title 28, Judiciary and Judicial Procedure, Section 1331 Federal Question, 28 U.S.C. § 1331.

## DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that has failed to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see also Dellecese v. Assigned Credit Sols., Inc.*, No. CV 15-6678 (JBS/KMW), 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017). Rule 55 establishes a two-step process for obtaining a default judgment: (1) the party seeking default must obtain an entry of default by the Clerk of the Court; and (2) once the Clerk of the Court has entered the default, the party can seek a default judgment. It is within the discretion of the district court whether to grant a motion for default judgment. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (explaining that the entry of default by the Clerk does not automatically entitle the non-defaulting party to default judgment; rather, the entry of default judgment is left primarily to the discretion of the district court).

The moving party is not entitled to default judgment as a right; rather, the Court may enter a default judgment "'only if the plaintiff's factual allegations establish the right to the

5

requested relief.'" *Dellecese*, 2017 WL 957848, at *2 (quoting *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012)); *see also Hritz*, 732 F.2d at 1181 (explaining that the Court has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable") (collecting cases); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (stating that "this court does not favor entry of defaults and default judgments" and noting the Court's preference that cases be decided on the merits). Accordingly, "before granting default judgment, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" *Dellecese*, 2017 WL 957848, at *2 (citations omitted). Moreover, when considering whether to grant a default judgment, the Court "must accept as true every 'well-pled' factual allegation of the complaint." *Id.* (citing *Comdyne I. Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### B. Personal Jurisdiction and Proof of Service

As an initial matter, in the Complaint, Plaintiffs assert that Defendant's principal place of business is in New Jersey (*Complaint*, ECF No. 1 at ¶ 16) and thus because its home is in New Jersey, the Court has general personal jurisdiction over

6

Defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (explaining that "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home").

Turning to the proof of service, Plaintiffs filed an executed summons whereupon a Mr. Joseph Bennie, the Registered Agent, was served on behalf of Defendant.[1]  The Federal Rules for executing service provide that "a domestic or foreign corporation, or a partnership or other unincorporated association . . . must be served in a judicial district of the United States, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(1)(B). Accordingly, given Mr. Bennie's designation as the Registered Agent for Defendant, the Court finds that Plaintiffs properly served Defendant.

**C. Sufficiency of Causes of Action**

Next, the Court must consider whether the undisputed facts provided in Plaintiffs' complaint allege legitimate claims. *IBEW Loc. 351 Pension Fund v. George Sparks, Inc.*, No. CIV.A. 14-2149,

---

[1] Public records identify Joseph Bennie as the Registered Agent, and therefore the Court will take judicial notice of his role as Registered Agent for purposes of service.  Fed. R. Ev. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

7

2015 WL 778795, at *1 (D.N.J. Feb. 24, 2015) ("The plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action before default judgment can be entered.") (citations omitted); *Mancuso v. Tyler Dane, LLC*, No. CIV.A. 08-5311 JHR, 2012 WL 1536210, at *2 (D.N.J. May 1, 2012).

1. Violation of ERISA

Plaintiffs have asserted a claim for the violation of ERISA resulting from Defendant's failure to make contributions as required under the CBA. ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, Plaintiffs allege that Defendant has failed to make contributions as required under the CBA. *Motion*, ECF No. 9-2 Exhibits A, C; *Complaint*, ECF No. 1 at ¶¶ 18-26. The CBA clearly establishes Defendant's obligations to make the contributions. In addition, Plaintiffs have provided extensive documentation demonstrating Defendant's failure to pay the contributions. *Motion*, ECF No. 9-2 Exhibits A, E, F. Therefore, Plaintiffs have stated a sufficient cause of action under ERISA to establish Defendant's liability with respect to the delinquent contributions. *See, e.g.*, *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. CIV. 11-624 JBS/JS, 2011 WL

4729023, at *3-4 (D.N.J. Oct. 5, 2011) (finding the plaintiff had stated a sufficient cause of action under similar circumstances).

### 2. Breach of Collective Bargaining Agreement

Plaintiffs also bring a cause of action for breach of contract, alleging Defendant breached the CBA by failing to remit dues check-offs. *Complaint*, ECF No. 1 at ¶¶ 29-32. "A breach of contract claim requires proof of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *3 (citing *Ramada Worldwide, Inc. v. Steve Young Kim,* No. 09-4534, 2010 WL 2879611 at *3 (D.N.J. July 15, 2010)).

Here, Plaintiffs have alleged the existence of a valid contract – the CBA. *Complaint*, ECF No. 1 at ¶¶ 19, 29; *see also Motion*, ECF No. 9-2 Exhibits A, C. Plaintiffs have also alleged that Defendant breached the CBA by failing to remit dues check-offs as required under the Agreement. *Complaint*, ECF No. 1 at ¶¶ 30-31. Additionally, Plaintiffs have provided the invoices for the delinquent contributions showing the damage from the Defendant's failure to remit the dues check-offs. *Motion*, ECF No. 9-2 Exhibit E. Therefore, Plaintiffs have sufficiently alleged a cause of action for breach of contract to establish Defendant's liability. *See Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *3.

**D. Default Judgement**

The Court must consider whether the entry of default judgment is proper. In making this determination, the Court must consider "'(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default.'" *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 686 (D.N.J. 2015) (quoting *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008)). The Court will address each of these considerations below.

*First*, the Court finds that there is no evidence that Defendant has a meritorious defense to overcome default judgment. Indeed, Defendant has not responded to or answered the Complaint and has thus failed to proffer *any* defense, meritorious or otherwise. *See Mancuso*, 2012 WL 1536210, at *3 (finding there was no meritorious defense because the defendant had failed to answer); *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *4 (finding no meritorious defense when the defendant failed to respond in the action). *Second*, the Court finds that Plaintiffs will be prejudiced in the absence of default judgment because they possess "no other means of seeking damages for the statutory harms caused by Defendant." *Dellecese*, 2017 WL 957848, at *3 (collecting cases); *see also Innovative Sports Mgmt., Inc. v. Tumi Int'l, Inc.*, No. CV 20-14253 (KM), 2021 WL 4026112, at *3 (D.N.J. Sept. 2, 2021)

(finding a plaintiff has been prejudiced by a defendant's failure to respond "because it has been 'prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion'") (citations omitted). *Third*, as previous courts have concluded, this Court finds that Defendant's complete failure to answer or respond in this case "evinces the Defendant's culpability in its default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *4; *see also Innovative Sports Mgmt., Inc.*, 2021 WL 4026112, at *3; *Interstate Realty Mgmt. Co. v. PF Holdings, LLC*, No. CV 16-4095 (JBS/JS), 2017 WL 53707, at *3 (D.N.J. Jan. 4, 2017) (finding that a defendant "may be presumed culpable for their inaction"). Because these factors weigh heavily in favor of the entry of default judgment, the Court will grant the Motion.

### E. Damages

1. <u>Damages under the Collective Bargaining Agreement</u>

The Court will now address the question of damages. While the Court must accept well-pleaded factual allegations as true, that is not the case for a plaintiff's factual allegations regarding damages. *Mancuso*, 2012 WL 1536210, at *2. To ascertain the appropriate amount of damages, courts may permit or order the submission of additional evidence to support the allegations of damages or conduct hearings. *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2; Fed. R. Civ. P. 55(b)(2). However, "the Court is

11

not required to conduct such hearings 'as long as it ensures that there is a basis for the damages specified in the default judgment.'" *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2 (quoting *Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.,* Civil No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct.27, 2009)). For example, courts have found that hearings are unnecessary when parties have submitted "detailed affidavits and documentary evidence" to support the claims for damages. *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2 (citing *Tamarin v. Adam Caterers,* 13 F.3d 51, 54 (2d Cir. 1993)). "Additionally, if the damages are for a 'sum certain or for a sum which can by computation be made certain, a further evidentiary inquiry is not necessary and a district court may enter final judgment.'" *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2 (citing *Bds. of Trs. of the Operating Eng'rs Local 825 Welfare Fund v. Robert Silagy Landscaping, Inc.,* Civil No. 06-1795, 2006 U.S. Dist. LEXIS 82475, at *9 (D.N.J. Nov. 9, 2006)). Here, Plaintiffs seek $15,404.21 in delinquent contributions for the period between July 1, 2019 through January 31, 2020. This amount is a sum certain based on the detailed invoices and documentation provided by Plaintiffs in support of the Motion showing the delinquent payments.[2] *Motion*, ECF No. 9-2 Exhibits E,

---

[2] There appears to be a typographical error in the chart outlining the delinquent payments and pay periods. However, in light of the documents included as

F; *Motion*, ECF No. 9-1. Therefore, the Court will award Plaintiffs the $15,404.21 Defendant was obligated to contribute to the Funds.

2. Liquidated Damages and Interest

Plaintiffs also assert that Defendant is required to pay liquidated damages and interest pursuant to the Policy. To this end, with respect to the calculations, the Policy provides:

> **E. INTEREST LIQUIDATED DAMAGES, ATTORNEY'S FEES, AND COSTS**
>
> Interest owed by a delinquent employer shall be calculated from the date that the Contributions became delinquent at 2% above the prime rate charged by the Funds' depository bank . . .
>
> **C. LEGAL ACTION AND SETTLEMENT**
>
> In the event an employer fails to pay the delinquent Contributions, interest, and liquidated damages . . . Fund Counsel shall assess a penalty in the amount of 20% of the unpaid balance

*Policy*, ECF No. 9-2 Exhibit B. Specifically, Plaintiffs seek $3,080.84 in liquidated damages, which represents 20% of Defendant's unpaid balance, and $1,516.82 in interest owed. *Motion*, ECF No. 9-1 at 3-4; *Motion*, ECF No. 9-2 Exhibits B, H. Therefore, in light of the express terms of the Policy, the Court will award Plaintiffs $3,080.84 in liquidated damages and $1,516.82 in interest.

---

Exhibits to the Motion, the Court notes that the time period at issue in this case is July 1, 2019 through July 31, 2019.

3. <u>Attorneys' Fees and Costs</u>

Finally, with respect to damages, Plaintiffs seek $2,507.50 in attorneys' fees and $482.00 in costs. Pursuant to 29 U.S.C. § 1132(g)(2)(D), the Court shall award attorneys fees and costs for actions brought to enforce 29 U.S.C. § 1145 of ERISA. Therefore, the attorney fees and costs that Plaintiffs have paid towards this litigation can be included in the damages.

The Certification submitted by Plaintiffs' counsel refers to client invoices and provides detailed descriptions of the work done in this matter. Therein, counsel certifies that the fee in this matter is $2,507.50, reflecting an hourly rate between $70 and $175 per hour. *Motion*, ECF No. 9-2 at 5. The Court finds that this is a reasonable fee in light of the nature of the case and services rendered. *See Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *5 (finding that an attorney's hourly rate of $250 and a fee of $2,330.00 was reasonable in an ERISA case under similar circumstances). Plaintiffs' counsel also certified that the total costs incurred amounted to $482.00. *Motion*, ECF No. 9-2 at 5. These costs include the costs associated with filing the Complaints and executing service on Defendant. *Motion*, ECF No. 9-2 Exhibits I, J. The Court finds that the total cost is reasonable and should be awarded to the Plaintiff. *See Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *5 (finding that attorney costs of $537.04 for similar services

14

was reasonable).

Therefore, the Court also awards Plaintiffs attorneys' fees in the amount of $2,507.50 and costs in the amount of $482.00.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment will be granted, and the Court will enter Default Judgment against Defendant and in favor of Plaintiffs in the amount of $20,001.87 plus attorneys' fees and costs of $2,989.50, for a total judgment of $22,991.37.